IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PALMER CRAVENS, LLC, ET AL<br>   *Plaintiffs* | §<br>§<br>§ | |
| v. | §<br>§ | Case No. 1:22-CV-00327-LY |
| PREFERRED CONTRACTORS<br>INSURANCE COMPANY, RISK<br>RETENTION GROUP, LLC<br>   *Defendant* | §<br>§<br>§<br>§ | |

## **DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... 2

INDEX OF EXHIBITS ............................................................................................................ 3

I.    NATURE AND SUMMARY OF THE CASE ............................................................. 3

II.   BACKGROUND ........................................................................................................... 4

    A.    The Roof Project ................................................................................................ 4

    B.    The Trial Against J-Mar ..................................................................................... 4

    C.    The Trial Against the Estate of Guy Hardy ....................................................... 9

III.  SUMMARY JUDGMENT STANDARD ................................................................... 11

IV.  ARGUMENT AND AUTHORITY ........................................................................... 12

    A.    What is a "fully adversarial trial?" ................................................................... 12

    B.    The Zoom bench trial in the Hardy Lawsuit was
           not fully adversarial ........................................................................................... 16

V.   CONCLUSION ............................................................................................................ 18

# **TABLE OF AUTHORITIES**

**CASES**

*Anderson v. Liberty Lobby Inc.*,
    477 U.S. 242 (1986) .................................................................................................... 12

*CBX Res., LLC v. Ace Am. Ins. Co.*,
    320 F.Supp.3d 853 (W.D. Tex. 2018) ......................................................................... 4, 15, 16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................... 11

*Duffy v. Leading Edge Prods., Inc.*,
    44 F.3d 308 (5th Cir. 1995) ......................................................................................... 12

*Great Am. Ins. Co. v. Hamel*,
    525 S.W.3d 655 (Tex. 2017) ....................................................................... 12, 13, 14, 15, 16, 17

*In re Essex Ins. Co.*,
    450 S.W.3d 524 (Tex. 2014) ....................................................................................... 12

*Nola Spice Designs, LLC v. Haydel Enters., Inc.*,
    783 F.3d 527 (5th Cir. 2015) ....................................................................................... 12

*State Farm Fire & Cas. Co. v. Gandy*,
    925 S.W.2d 696 (Tex. 1996) ....................................................................................... 3, 4, 12, 15

*Turner v. Cincinnati Ins. Co.*,
    9 F.4th 300 (5th Cir. 2021) ......................................................................................... 3, 12

**RULES**

Federal Rule of Civil Procedure 56 .................................................................................... 11

## **INDEX OF EXHIBITS**

The following exhibits are attached to Defendant's Motion for Partial Summary Judgment and are incorporated herein for all purposes:

| | |
|---|---|
| Exhibit 1 | Affidavit of David W. Smith |
| Exhibit 2 | Chapter 7 Bankruptcy Petition |
| Exhibit 3 | Notice of Appearance |
| Exhibit 4 | Bankruptcy Discharge Order |
| Exhibit 5 | Agreed Order on Motion to Server [*sic*] |
| Exhibit 6 | Trial Transcript from Ja-Mar Lawsuit V.5 at p. 50 |
| Exhibit 7 | Trial Transcript from the Ja-Mar Lawsuit V.6 at p. 121 |
| Exhibit 8 | Trial Transcript from the Ja-Mar Lawsuit V.8 at p. 29 - 35 |
| Exhibit 9 | Ja-Mar Lawsuit Jury Verdict |
| Exhibit 10 | Agreed Order on Motion to Sever |
| Exhibit 11 | Dr. Judy A. Nixon's Original Answer |
| Exhibit 12 | Nora Kay Finley's Original Answer |
| Exhibit 13 | Writs of Scire Facias |
| Exhibit 14 | Trial Transcript from the Hardy Lawsuit |
| Exhibit 15 | Suggestion of Death |

### **I. NATURE AND SUMMARY OF THE CASE**

A judgment for a plaintiff against a defendant is not binding or admissible against a defendant's insurer in a subsequent action unless it was rendered during a fully adversarial trial. *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 310 (5th Cir. 2021)(*citing State Farm Fire*

*& Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996)). In this case, Palmer Cravens, LLC's ("Palmer") judgment against the Estate of Guy Hardy (the "Estate") is not binding in this subsequent action against Preferred Contractors Insurance Company Risk Retention Group, LLC ("PCIC") because it was not the result of a fully adversarial trial. As discussed in greater detail below, the Estate was not represented during the trial and no defense was presented. Faced with a similar factual scenario, one court described this situation as antithetical to an adversarial proceeding. *See CBX Res., LLC v. Ace Am. Ins. Co.,* 320 F.Supp.3d 853, 861 (W.D. Tex. 2018).

## II. BACKGROUND

### A. The Roof Project.

The underlying claim arose from a project to remove and remodel the damaged roof of a Veterans Administration Outpatient Clinic ("VA Clinic") located in McAllen, Texas. Palmer owned the property and leased it to the VA Clinic. Following an April 2012 hailstorm, Palmer contracted with D.L. Phillips Construction d/b/a Ja-Mar Roofing ("Ja-Mar") to remove and upgrade the roof system. Ja-Mar subcontracted the roofing work to Guy Hardy d/b/a Dripping Springs Roofing ("Hardy") which, in turn, subcontracted the work to JO Roofing ("JO"). The roof system manufacturer, GAF, inspected the roof on April 22, 2013, and approved the issuance of GAF's 20-year guarantee. However, it began to leak sometime thereafter.

### B. The Trial Against Ja-Mar.

In June 2014, Palmer filed suit against Ja-Mar in the 332nd District Court of Hidalgo County, Texas, claiming that the roof was defective and needed to be removed and replaced

4

(the "Ja-Mar Lawsuit"). Palmer added Hardy to the Ja-Mar Lawsuit in an amended petition filed on January 12, 2015. Hardy did not provide notice of the lawsuit to PCIC. Ultimately, PCIC received notice of the lawsuit when counsel for Ja-Mar forwarded Plaintiff's Third Amended Petition in August 2017, more than two years after Hardy had been sued. The contract between Palmer and Ja-Mar was attached to the petition as Exhibit A and described the project as upgrading the roofing system on the VA Clinic. On November 8, 2017, a letter was sent to Hardy denying the claim based on a Hospital Project Work Exclusion, and reserving all other rights under the Policy.

On August 11, 2017, Hardy filed a petition for Chapter 7 Bankruptcy. (See Exhibit 1, Affidavit of David W. Smith and Exhibit 2, Bankruptcy Petition). Ja-Mar received notice of Hardy's bankruptcy filing and made an appearance in the bankruptcy proceeding. (See Exhibit 3, Notice of Appearance). There is no record that the court in the Ja-Mar Lawsuit was notified of the bankruptcy while it was pending. On December 7, 2017, the bankruptcy court entered a "no asset" discharge to Hardy. (See Exhibit 4, Discharge Order).

After PCIC denied the claim based upon the Hospital Project Work Exclusion, Palmer filed an amended petition which removed any reference to the VA Clinic. After receipt of the amended petition and without knowledge of the bankruptcy discharge, PCIC agreed to defend Hardy under a reservation of rights. An answer was filed on Hardy's behalf on January 30, 2018.

Shortly after the answer was filed, PCIC learned that Hardy was first served with the Ja-Mar Lawsuit on March 5, 2015, appeared for a deposition without legal counsel on January 12, 2016, and passed away on January 13, 2018. PCIC also learned that Hardy had

5

subcontracted the work without complying with the subcontractor conditions of the policy. As a result, on March 19, 2018, PCIC issued a letter to the Estate of Guy Hardy (the "Estate") at the two last known addresses for Hardy, advising of the reasons for its decision to withdraw the defense. The letter further stated that if the Estate disagreed with the determination and/or had additional information relevant to the determination, to contact PCIC. PCIC received no response.

The trial against Ja-Mar began on June 12, 2018, before Judge Mario Ramirez, Jr. The following day, Palmer filed an Agreed Order on Motion to Server [*sic*]. (See Exhibit 5, Agreed Order on Motion to Server [*sic*]). According to the proposed order, Palmer orally moved, and Ja-Mar agreed, to sever all claims against Hardy into a separate cause. *Id.* The proposed order further noted the parties' agreement that Ja-Mar was allowed to designate Hardy as a responsible third party and present Hardy's negligence to the jury, depending on the evidence presented. *Id.* There is nothing in the proposed order or the available record justifying why the claims against Hardy for the same damages, arising out of the same occurrence, and requiring the same jury questions should be severed. The proposed order was never signed.

During the trial, Palmer presented an expert witness who testified that the cost to repair the VA Clinic was $2,091,208. (See Exhibit 6, Trial Transcript from the Ja-Mar Lawsuit V.5 at p.50). Palmer also presented the testimony of its owner, Jay Palmer, who testified that the fair market rental value was $40,000 per month. (See Exhibit 7, Trial Transcript from the Ja-Mar Lawsuit V.6 at p.121). During closing arguments, Palmer argued to the jury that it should award Palmer $2,074,208 for cost of repair ($2,091,208

minus $17,000 which should not have been included) and lost rents in the amount of $40,000 per month for 45 months, totaling $1,800,000. (See Exhibit 8, Trial Transcript from the Ja-Mar Lawsuit V.8 at p. 29 - 35).

The jury returned a verdict awarding $600,000 for the reasonable cost of necessary repairs and $0.00 for loss of rental income. (See Exhibit 9, Ja-Mar Lawsuit Jury Verdict). The alleged negligence of both Hardy and JO were presented to the jury in the Ja-Mar Lawsuit. During closing argument, Palmer's counsel stated the following:

> You were asked about Guy Hardy and Mr. Ortegon and, you now, whether or not they are negligent or not. They are the ones that did the installing, but they also testified that they are the ones that followed the instructions of Ja-Mar.
>
> Poor Mr. Ortegon says, I was just doing what I was told. I didn't agree with it, but I was doing what I was paid for.
>
> We asked Mr. Hardy, Mr. Hardy says, Hey, man, there is a lot of problems on that roof. You know, but I was just doing what I was told. Ja-Mar was the one who was telling me to cut corners. And the corners I was told to cut was because we thought we were saving money for Mr. Palmer. So whether you want to call that negligence on their part, yeah, it was negligence on their part.
>
> But when it comes to the percentage of responsibility, what did David Phillips says? The buck stops at Ja-Mar. The buck stops at Ja-Mar. So 100 percent of the responsibility needs to be assessed where it belongs, and that's with Ja-Mar. (See Exhibit 8, at p. 33).

The jury apparently accepted Palmer's argument that 100 percent of the negligence belonged to Ja-Mar. The jury found Hardy was not negligent and apportioned zero percent of the responsibility to him. Specifically, the jury answered as follows to Questions 3 and 4:

## QUESTION 3

Did the negligence, if any, of those named below proximately cause injury to Park Place Ventures?

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom. There may be more than one proximate cause of an injury.

Answer "Yes" or "No" for each of the following:

1. Ja-Mar      ~~100%~~ Yes
2. Hardy       ~~0%~~ NO
3. Ortegon     ~~0%~~ NO

If you answered "Yes" to Question 3 for more than one of those named below, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 4

Assign percentages of responsibility only to those you found caused or contributed to cause the injury. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.

For each person you found caused or contributed to cause the injury, find the percentage of responsibility attributable to each:

1. Ja-Mar      _100_ %
2. Hardy       _0_ %
3. Ortegon     _0_ %

                       Total 100 %

8

(See Exhibit 9).

Judge Ramirez set aside the jury verdict regarding lost rents and awarded Palmer the full $1,800,000 requested. Ja-Mar filed a motion for new trial, vigorously arguing that the setting aside of the jury's finding of zero damages for lost rents was in error. The motion was pending when Palmer and Ja-Mar reached a confidential settlement.

On March 27, 2019, nearly a year after the trial in which Palmer argued, and the jury agreed, that Ja-Mar was 100 percent liable for its damages, Palmer filed a new proposed Agreed Order on Motion to Sever. Judge Ramirez signed the order on April 1, 2019. (See Exhibit 10, Agreed Order on Motion to Sever).

The severance now gave Palmer a second bite at the apple. Not only could it take a completely contradictory position on the negligence of Hardy than it had previously represented to the jury, it could also ask Judge Ramirez to award the damages that a jury of twelve had unanimously rejected in the Ja-Mar trial.

    **C.**    **The Trial Against the Estate of Guy Hardy.**

On March 3, 2020, Palmer filed a Tenth Amended Original Petition in the severed cause of action against the Estate, naming Judy A. Nixon and Nora Kay Finley as heirs. ("the Hardy Lawsuit"). Dr. Nixon attached an affidavit to her Original Petition specifically denying that she was married to Hardy when he died. (See Exhibit 11, Dr. Judy A. Nixon's Original Answer). Ms. Finley likewise specifically denied that she was liable in the capacity in which she was sued. (See Exhibit 12, Defendant Nora Kay Finley's Original Answer). Prior to the trial, the court issued Writs of Scire Facias to Dr. Nixon and Ms. Finley commanding them to "appear and defend" the suit as alleged heirs of the Estate.

(See Exhibit 13, Writs of Scire Facias). Both Dr. Nixon and Ms. Finley appeared at the Zoom bench trial represented by counsel, but neither made any attempt to defend the Estate.

On August 25, 2020, Palmer proceeded with a Zoom bench trial against the Estate. Except for a few withdrawn exhibits, Palmer moved to pre-admit Plaintiff's trial Exhibits 1-113 from the trial of the Ja-Mar Lawsuit. (See Exhibit 14, Trial Transcript from the Hardy Lawsuit at p. 15). The exhibits were admitted without objection. *Id.* at 16. Palmer also moved to admit the entire deposition transcript of 11 witnesses, again without objection. *Id.* at 17-18.

Palmer then called its only live witness, Jay Palmer, to testify. Mr. Palmer testified that he signed a contract with Ja-Mar to replace the roof at the VA Clinic and that the roof leaked after the project was complete. *Id.* at 20-21. Mr. Palmer testified that he was not aware that Ja-Mar subcontracted the work until after he filed the lawsuit and that Palmer added Hardy and JO shortly after it found out. *Id.* at 22-23. Mr. Palmer never offered any testimony regarding exactly how Hardy was responsible for the damage. Mr. Palmer then testified that the cost to repair would be at least $2,074,208, the exact amount the jury substantially rejected in the trial against Ja-Mar. *Id.* at 24-25. He also testified that Palmer suffered $1,800,000 in lost rental income, again the exact amount that the jury rejected in the prior trial. *Id.* at 25-26.

Counsel for Dr. Nixon and Ms. Finley did not cross exam Mr. Palmer. However, the following exchange took place after Palmer's counsel passed the witness:

THE COURT: Any questions anybody? You're muted. You're muted, sir.

>MR. COLLIE: Yes, sir. No questions, Your Honor. I just wanted to just state for the record again the evidence we provided to the Court shows that Ms. --Dr. Nixon is not an heir, and as such we expect Guy Hardy's original answer to stand. And we expect to make no efforts of our own to present a defense against -- against this matter at all.
>
>THE COURT: All right. Thank you. I'm sorry, I didn't mean to cut you off. Is there anything else?
>
>MR. COLLIE: Just checking my notes. Just adding that the -- the insurance company's withdrawal is what put us in a position to even be here. So we'd like to – just want to put it on the record that we don't have -- we don't have an interest in the estate if there was an estate there to begin with.
>
>THE COURT: All right, sir. Thank you. Same answer, Mr. Wood?
>
>MR. WOOD: Same answer, Your Honor.
>
>THE COURT: All right, sir.

*Id.* at 27-28.

Palmer then requested the trial court award the damages requested against the Estate, specifically clarifying that the requested judgment was against the Estate only, not Dr. Nixon or Ms. Finley. *Id.* at 28-29. Judge Ramirez awarded the damages requested with interest and stated that the amount awarded was against the Estate, "and not the two parties who appeared here in court represented by Mr. Collie and Mr. Wood." *Id*. at 29.

### III. SUMMARY JUDGMENT STANDARD

According to Federal Rule of Civil Procedure 56, a Court should grant a motion for summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A fact is material if it might affect the outcome of the suit under

11

governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). The movant bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). Once the movant makes the initial showing, the nonmoving party must produce evidence showing that there is a genuine issue for trial. *Id.* Unsupported allegations and conclusory assertions will not defeat a motion for summary judgment. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

## IV. ARGUMENT AND AUTHORITY

### A.     What is a "fully adversarial trial?"

According to the "no direct action" rule, an injured party cannot sue the defendant's insurer directly until the defendant's liability has been finally determined by agreement or judgment. *Turner*, 9 F.4th at 309 (*citing In re Essex Ins. Co.*, 450 S.W.3d 524, 525 (Tex. 2014)). If a judgment is rendered without a fully adversarial trial, it is not binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer. *Gandy*, 925 S.W.2d at 714. "Fundamentally, proceedings are "adversarial" when the parties oppose each other." *Great Am. Ins. Co. v. Hamel*, 525 S.W.3d 655, 666 (Tex. 2017); *see also Turner*, 9 F.4th at 312. Because the Texas Supreme Court clarified what constitutes a fully adversarial trial in *Hamel*, a detailed analysis is helpful.

In *Hamel*, Glen and Marsha Hamel built a single-family home in Flower Mound, Texas. *Id.* at 659. When their original builder abandoned the project, they hired Terry Mitchell Builders, Inc. (the "Builder") to finish the home. The home's exterior was finished

with an Exterior Insulation and Finish System ("EFIS"), a synthetic stucco that can cause wood rot and other water damage if not installed properly. The home was completed in 1995, the Hamels noticed signs of water damage in 2000, and sued the Builder in 2002. *Id.*

Great American Insurance Company ("Great American") insured the Builder under separate annual polices from May 3, 1996, to May 3, 2001. The first three policies did not exclude EFIS, but the last two policies did. Great American denied coverage contending that the applicable policy was the one in effect in 2000, which contained the EFIS exclusion. *Id.* Great American later conceded that the position was erroneous.

A week before trial, the Hamels entered into a Rule 11 Agreement with the Builder agreeing that if they obtained a judgment against the Builder, they would not attempt to pierce the corporate veil and enforce the judgment against the Builder's owner, Terry Mitchell. Mitchell agreed to appear at trial and not to seek a continuance. He was represented by counsel. *Id.* at 660.

During the trial, Mitchell testified that it was the Builder's duty to make sure the house was finished in a good and workmanlike manner, he failed to inspect all the original builder's work, and his "honest mistakes" amounted to a failure to complete the home in a good and workmanlike manner. *Id.* at 661. The Hamels and their expert testified about damages. The Builder presented no witnesses. The trial court accepted the Hamels' attorney's suggestion that the parties submit proposed findings of fact and conclusions of law in lieu of closing arguments, but only the Hamels submitted them. The trial court adopted the Hamels' findings and awarded $365,089 in damages. The Builder subsequently

assigned most of his rights against Great American to the Hamels. The Hamels, as the Builder's assignees and judgment creditors, then brought suit against Great American. *Id*.

The Hamels' suit against Great American was tried to the bench. *Id*. The entire record from the underlying case was entered into evidence, along with depositions and expert testimony. The trial court found that the Builder defended itself in good faith and entered judgment for the Hamels. *Id.* at 662. The court of appeals affirmed. *Id*. The Texas Supreme Court used the opportunity to clarify the meaning of the phrase "fully adversarial trial."

The Court explained that the focus of the inquiry is on whether the underlying judgment accurately reflects the plaintiff's damages and thus the insured's covered loss. *Id.* at 665. The controlling factor is whether, at the time of the underlying trial or settlement, the insured bore an actual risk of liability for the damages awarded or agreed upon, or had some other meaningful incentive to ensure that the judgment or settlement accurately reflects the plaintiff's damages. *Id.* at 666. According to the Court, proceedings lose their adversarial nature when one party has no stake in the outcome and thus no meaningful incentive to defend itself. *Id.* at 667.

The Court held that the pretrial agreement eliminated any meaningful incentive the Builder had to contest the judgment. *Id.* at 666-667. As a result, it was not fully adversarial. While the Court did not hold Great American bound to the judgment that was not the result of an adversarial proceeding, it did allow the parties to proceed to litigate the underlying liability issues in a subsequent coverage suit. *Id.* at 671.

Following *Hamel*, a case with very similar facts was presented to the United States District Court for the Western District of Texas. *See CBX Res., LLC v. Ace Am. Ins. Co.,* 320 F.Supp.3d 853 (W.D. Tex. 2018). CBX Resources, LLC ("CBX") sued Espada Operating, LLC ("Espada") alleging that Espada's negligence resulted in the loss of a well bore. Espada's insurer, Ace American ("Ace"), initially defended Espada but withdrew that defense based on an exclusion in the policy. When Espada failed to appear for the pre-trial hearing, the trial court entered judgment in CBX's favor and set a hearing for evidence in support of damages. After hearing witnesses and evidence in support of damages, the trial court entered a $105,000,000 judgment against Espada. The trial court then entered an Order for Turnover Relief, transferring ownership of Espada's causes of action against Ace to CBX. Thereafter, CBX brought suit in federal court against Ace. *Id.* at 856.

Relying heavily on *Hamel*, the district court held that the underlying judgment was not the product of a fully adversarial trial. *Id.* at 861. CBX attempted to distinguish *Hamel*, arguing that there was no pretrial agreement or evidence of collusion with Espada. The court acknowledged the difference but stated:

> Extending *Hamel* and *Gandy* to the most straight-forward interpretation, the fact that Espada failed to appear at docket call in the underlying trial and damages hearing, leads the Court to believe that the trial and underlying judgment was not fully adversarial and therefore cannot be used as evidence in this case.

*Id.* at 860. CBX produced six witnesses and 47 exhibits at the damages hearing without any witness or testimony from the other party. It was clear there was no opposition to the amount of damages claimed by CBX. According to the court, "[s]uch a proceeding is antithetical to an 'adversarial proceeding.'" *Id.* at 861. The court held that the judgment

was not the result of a fully adversarial proceeding because Espada did not have a meaningful incentive to ensure that CBX's judgment accurately reflected its damages. *Id.* The same is true in the present situation.

    **B.**    **The Zoom bench trial in the Hardy Lawsuit was not fully adversarial.**

Applying *Hamel* and *CBX* to the present case, it is apparent that the Hardy Lawsuit was not a fully adversarial trial for the following reasons:

1. Guy Hardy d/b/a Dripping Springs Roofing was a sole proprietorship and Hardy passed away prior to trial. (See Exhibit 14 at p.13-14).

2. Hardy's debts had been completely discharged in bankruptcy prior to the trial. (See Exhibit 4).

3. The Estate was not represented by counsel or any representative at the trial. (See Exhibit 14).

4. Palmer admitted 106 exhibits without any objection. *Id.* at 15.

5. Palmer admitted 11 deposition transcripts without any objection. *Id.* at 17-18.

6. Palmer called the only live witness. *Id.* at 19-27.

7. There was no cross examination. *Id.* at 27-28.

8. No defense was presented. *Id.*

9. Both Dr. Nixon and Ms. Finley disclaimed any interest in the Estate, and had no meaningful incentive to ensure that Palmer's judgment accurately reflected its damages. *Id.* and Exhibits 11 and 12.

10. The trial court awarded exactly what Palmer requested. (See Exhibit 14 at 28-29). It did this, despite the fact that a jury in the Ja-Mar Lawsuit previously rejected that same damage requests.

Hardy received a "no asset" Chapter 7 Bankruptcy Order of Discharge on December 7, 2017. (See Exhibit 4). He died 37 days later, on January 13, 2018. (See Exhibit 15, Suggestion of Death). Although the Writs of Scire Facias issued to Dr. Nixon and Ms. Finley commanded them to "defend the suit" against the Estate, they clearly did not. In fact, through their counsel, they denied any intent to do so. The reason is clear; Hardy left no estate to defend. No one appearing at the Zoom bench trial had an actual risk of liability for the damages awarded. *See Hamel*, 525 S.W.3d at 666.

The severed action accomplished exactly what Palmer had intended: an unopposed bench trial in which (1) all liability was attributed to an unrepresented defendant who had previously been found zero percent responsible, and (2) all the damages that had previously been rejected by a jury of twelve were awarded in their entirety. From the time Palmer learned that PCIC had denied coverage until the entry of judgment against the Estate in the severed action, Palmer's manipulation of the litigation process had a clear objective. It was not done with any hope or intention of collecting from the Estate. It was done to obtain a final, unappealable judgment against PCIC's insured that had no correlation to actual liability or damages, and then seek to collect that judgment from PCIC.

According to the Texas Supreme Court, "proceedings are 'adversarial' when the parties oppose each other." *Hamel*, 525 S.W.3d at 666. Palmer clearly faced no opposition throughout this entire process. Based upon the facts and applicable law, the judgment

17

which Palmer seeks to enforce against PCIC was not the result of a fully adversarial trial. Therefore, it is not binding on PCIC as a matter of law.

## V. CONCLUSION

For the foregoing reasons, the Court should grant PCIC's Motion for Partial Summary Judgment, hold that the trial in the Hardy Lawsuit was not a fully adversarial trial, the judgment entered is not binding on PCIC or admissible as evidence of liability or damages in Palmer's action against PCIC, and allow the parties to proceed to litigate the underlying liability and damage issues in this suit.

Respectfully submitted,

*/s/ David W. Smith*
Tracy Jackson Cowart
State Bar No. 00789398
tjc@egglestonbriscoe.com
David W. Smith
State Bar No. 24027868
dws@egglestonbriscoe.com
EGGLESTON & BRISCOE, LLP
4800 Three Allen Center
333 Clay Street
Houston, Texas 77002
713.659.5100
713.951.9920 – fax

ATTORNEYS FOR DEFENDANT
PREFERRED CONTRACTOR INSURANCE
COMPANY RISK RETENTION GROUP,
LLC

## **CERTIFICATE OF SERVICE**

I certify that on January 27, 2023, a true and correct copy of the foregoing was forwarded to all counsel of record, including those indicated below, via the CM/ECF System and/or any proper method of service allowed by the Federal Rules of Civil Procedure, the Local Rules for this Court, or any method of service agreed to in writing by the parties:

David W. Jones
BECK REDDEN LLP
1221 McKinney St., Ste 4500
Houston, Texas 77010
djones@beckredden.com

Raymond L. Thomas
RAY THOMAS, PC
4900-B North 10th Street
McAllen, Texas 78504
rthomas@raythomaspc.com

/s/ *David W. Smith*
David W. Smith